IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS J. McCUE,<br><br>   Plaintiff,<br><br>   v.<br><br>EMIGRANT MORTGAGE COMPANY, INC., and EMIGRANT SAVINGS BANK,<br><br>   Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-960 (JBS/JS)<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

   Plaintiff Thomas J. McCue's residence was foreclosed due to his mortgage indebtedness to Defendants Emigrant Mortgage Company, Inc. and Emigrant Savings Bank by the Superior Court of New Jersey in 2013 and it was sold by Sheriff's sale in 2015. He now seeks in this new federal case to raise additional claims and defenses against foreclosure, including claims under the Truth-in-Lending Act and Fair Debt Collections Practices Act. This matter comes before the Court upon Defendants' motion to dismiss the Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P. [Docket Item 27.] The principal issue to be decided is whether Plaintiff's current suit is barred by New Jersey's entire controversy doctrine and N.J. Ct. R. 4:65-5 (requiring that all "germane" claims be joined in the

foreclosure action or they are forever barred.) This Court finds as follows:

    1.    Plaintiff Thomas J. McCue alleges that he obtained a home equity loan from Emigrant Mortgage Company, Inc. ("Emigrant" or "Defendant") in 2007 in order to improve a home he owned in Cinnaminson, New Jersey. According to Plaintiff, his $40,000 escrow was to be held in an interest-bearing account, which 4-6% interest rate would offset the 10% interest he owed on the mortgage note. Plaintiff and Defendant appear to have had a misunderstanding over the nature of the escrow account and the amount ultimately due on his mortgage note. Plaintiff contends that Defendant never kept his money in the interest-bearing account his mortgage contract required. Defendant ultimately foreclosed on Plaintiff's home, which final judgment was entered on July 24, 2013. Plaintiff now avers that the bank's conduct regarding the loan and during the foreclosure proceedings constitutes fraud, unjust enrichment, a violation of the Truth-in-Lending Act, and a violation of the Fair Debt Collection Practices Act.

    2.    Specifically, Plaintiff avers that Emigrant withheld documentation about his mortgage and the existence of the savings account for his "escrow/pledge account."[1] (Amended

---

[1] For purposes of the pending motions, the Court accepts as true the version of events set forth in Plaintiff's Complaint,

2

Complaint ¶¶ 15-19, 22-23, 26-27.) Plaintiff avers that he made payments on his mortgage until February 2009, when he "purposefully withheld payments to force Emigrant Mortgage to find the $40,000 savings account that Mr. McCue was paying interest on." (Id. ¶ 25.) When Emigrant threatened foreclosure proceedings against Plaintiff, Plaintiff wired the full amount due on his mortgage according to his last account statement, which Defendant refused to accept and returned to him the next day. (Id. ¶¶ 29-34.)

3.   Defendant filed a foreclosure complaint against Plaintiff on June 15, 2009, in the Superior Court of New Jersey, Burlington County, Docket No. F-31562-09. (Id. ¶ 32.) Plaintiff filed an answer and separate defenses to the foreclosure complaint. (Id. ¶ 36.) While Defendant's motion for summary judgment was pending before the Superior Court, Plaintiff filed a request for reinstatement of his mortgage and produced the exact amount of money required; Defendant refused to accept payment on account of a provision allegedly inserted by Emigrant into the mortgage by which Plaintiff agreed to waive his right

---

documents explicitly relied upon in the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). The Court may consider these documents on a motion to dismiss without converting the motion to one for summary judgment. Id. All of the documents attached to Defendants' motion to dismiss are documents relied upon in the Complaint and/or matters of public record.

3

to request reinstatement of the note and mortgage once acceleration of payment was requested. (Id. ¶¶ 38-49.)

    4.   Emigrant obtained summary judgment in its favor on May 28, 2010 and applied for final judgment on April 24, 2012. (Id. ¶ 54, 58.) Plaintiff objected to the amount due, contending that the $40,000 escrow should have been used to pay down the principal amount on his loan. (Id. ¶ 59.) The Superior Court overruled Plaintiff's objection, but ordered Defendant to credit Plaintiff for "interest actually earned on the $40,000 escrow from the time of deposit to February 8, 2013." (Exhibit A to Defendants' Motion.)

    5.   The Superior Court entered final judgment on Defendant's foreclosure action on July 24, 2013. (Ex. B to Def. Mot.) Plaintiff avers that he never received an account statement or an acknowledgment from Emigrant about the interest accrued on his escrow account in accordance with the Superior Court's order. (Am. Compl. ¶ 65.) On or about October 7, 2013, Plaintiff filed a motion to vacate the final judgment and an emergency petition to stay the Sheriff's sale scheduled for October 10, 2013. (Id. ¶¶ 71-75.) The Superior Court denied Plaintiff's motions, finding, inter alia, that "the interest ordered has been given to" Plaintiff and that Plaintiff's mortgage was valid. (Ex. C. to Def. Mot.)

6.  Plaintiff twice filed for bankruptcy in order "to attempt to get Emigrant to review the accounting and acknowledge their mistake." (Am. Compl. ¶¶ 81, 83-87.) Between the two bankruptcy cases, Plaintiff filed another motion to vacate the final judgment and stay the Sheriff's sale. The Superior Court denied Plaintiff's motions by orders dated June 11, 2014 and July 11, 2014, finding again that Plaintiff had been credited with the interest and that there was no other basis on which to vacate the final judgment. (Ex. D & E to Def. Mot.) Ultimately, after both of Plaintiff's bankruptcy petitions were adjudicated, Plaintiff's property was sold at Sheriff's sale on July 24, 2015. (Ex. F to Def. Mot.) Plaintiff was evicted from the property on or about February 22, 2016. (Ex. G to Def. Mot.) This case, and emergency motions to cancel Plaintiff's eviction, were filed on the same day. [Docket Items 1, 4, 5 & 6.][2]

7.  For the reasons now discussed, the Court will grant Defendants' motion to dismiss, finding that New Jersey's entire controversy doctrine bars Plaintiff's claims in this case.

8.  As an initial matter, the Court recognizes that it "must give to a state-court judgment the same preclusive effect

---

[2] On February 26, 2016, this Court denied Plaintiff's motions for emergency relief, finding that the motions were procedurally deficient for failing to comply with L. Civ. R. 65.1(a) and expressing doubt that the Court had jurisdiction to review Plaintiff's claims under the Rooker-Feldman doctrine. [Docket Items 9 & 10.]

5

as would be given that judgment under the law of the State in which the judgment was rendered." Walker v. Horn, 385 F.3d 321, 337 (3d Cir. 2004) (citation omitted). New Jersey's entire controversy doctrine "is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).

> The Entire Controversy Doctrine embodies the notion that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. The Doctrine thus requires a party to bring in one action all affirmative claims that it might have against another party, including counterclaims and cross-claims . . . or be forever barred from bringing a subsequent action involving the same underlying facts.

Id. at 885.

9. The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Venner v. Bank of America, Civil No. 07-4040, 2009 WL 1416043, at *2 (D.N.J. May 19, 2009) (quoting Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592, 599 (N.J. 1991)). "It is [a] commonality of facts, rather than the

commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine." DiTrolio v. Antiles, 662 A.2d 494, 504 (N.J. 1995). Importantly, the doctrine "bars not only claims that were brought in the previous action, but also claims that could have been brought." In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008).

    10.  With respect to foreclosure actions specifically, the entire controversy doctrine requires that all "germane" claims must be joined in the first action or they are forever barred. N.J. Ct. R. 4:64-5. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." In re Mullarkey, 536 F.3d at 229. In other words, any claim challenging the foreclosure-plaintiff's "right to foreclose" is "germane" to a foreclosure action and must be raised there. Sun NLF Ltd. v. Sasso, 713 A.2d 538, 540 (N.J. App. Div. 1988). Thus, this Court recently held in Bembry v. Twp. of Mullica that N.J. Ct. R. 4:65-5 and the entire controversy doctrine encompass all statutory, common law, and constitutional claims relating to a foreclosure action and the underlying mortgage or tax transaction that led to the

7

foreclosure. Civil No. 16-5734, 2017 WL 3033126, at *3 (D.N.J. July 17, 2017).

11.   The entire controversy doctrine bars Plaintiff's claims against Defendants because the same facts form the basis of his claims both in this Court and in the underlying foreclosure action, and because the crux of his claims in both cases assert impropriety and misrepresentation with respect to his "escrow/pledge" account, the interest accrued thereon, and the mortgage instrument itself. In other words, even if Plaintiff's claims are styled as fraud, unjust enrichment, or federal Truth-in-Lending Act or Fair Debt Collection Practices Act causes of action, where they were differently labeled before the Superior Court, he cannot escape the fact that they share the same essence in both courts: that Emigrant miscalculated the amount due on the mortgage and that the mortgage instrument itself, and the foreclosure proceeding, is invalid. Each of the current claims was available and could have been raised by Plaintiff when litigating the foreclosure case in Superior Court years ago.

12.   The Court has no doubt that these claims are "germane" for two reasons. First, N.J. Ct. R. 4:64-5 permits that <u>only</u> germane claims may be litigated in a foreclosure action without leave of court, and the Superior Court adjudicated Plaintiff's arguments about the validity of the mortgage and the amount due

thereunder without hesitation. Second, even if the Court were to assume that Plaintiff's precise Truth-in-Lending or Fair Debt Collections Practices Act claims were not actually raised before and decided by the Superior Court, these claims challenge Emigrant's "right to foreclose" and could have been raised before the Superior Court. Sun NLF, 713 A.2d at 540. Because the entire controversy doctrine operates to bar "not only claims that were brought in the previous action, but also claims that could have been brought," In re Mullarkey, 536 F.3d at 225, Plaintiff is not permitted to relitigate these questions in this Court, even with new labels attached.

13. Accordingly, the Court will grant Defendants' motion and will dismiss the Amended Complaint with prejudice. A court may deny leave to amend a complaint where it is apparent that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." United States ex rel. Schumann v. AstraZeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (citing Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000)). In this case, because the Plaintiff's Amended Complaint is legally insufficient, and not merely factually insufficient, any amendment would be futile.

14. An accompanying Order will be entered granting Defendants' motion to dismiss with prejudice.


**July 24, 2017**                           **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                             U.S. District Judge